**UNITED STATES of America**

v.

**James GEMMELL, Jr., Henry J. Kunzig, Charles E. Milbury, General Engineering Works, Inc.**

**and**

**Peacock Welding Co.**

Civ. A. No. 18554.

United States District Court
E. D. Pennsylvania.

Feb. 10, 1958.

Harold K. Wood, U. S. Atty., Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., for U. S.

Robert C. Duffy, Philadelphia, Pa., by Francis Logan, Philadelphia, Pa., for James Gemmell, Jr.

G. A. Wilderman, Philadelphia, Pa., for Henry J. Kunzig.

Morton Abrams, Philadelphia, Pa., for General Engineering Works, Inc.

Santarone & Rendine, Philadelphia, Pa., by Daniel M. Rendine, Philadelphia, Pa., for Peacock Welding Co.

GANEY, District Judge.

This is an action to recover amounts paid in violation of the Act of March 8, 1946, c. 80, §§ 1 and 2, 60 Stat. 37, 41 U.S.C.A. §§ 51 and 52, commonly known as the Anti-Kickback Act. From the evidence presented to it, this court makes the following

### Findings of Facts:

1. During the period of August 1942 to February 1945, the War Shipping Administration ("W.S.A.") was an agency of the United States.

2. General Engineering Works, Inc., 717 S. Front Street, Philadelphia, Pa. ("General Engineering"), was a prime contractor within the meaning of § 1 of the Anti-Kickback Act, 41 U.S.C.A. § 51, holding contracts Nos. MCc–1948, dated April 1, 1941, DA–MCc–368, dated April 1, 1941, and WSA–5531, dated July 1, 1943 with W.S.A.

3. James Gemmell, Jr. was secretary-treasurer of General Engineering. John Milbury [1] was employed as an outside superintendent of repairs by General Engineering.

4. Pioneer Engineering Company, 139 S. Third Street, Philadelphia, Pa. ("Pioneer Engineering"), was a prime contractor within the meaning of § 1 of the Anti-Kickback Act holding contracts Nos. DA–MCc, MCc–1883, both dated April 1, 1941, and WSA–5314, dated July 1, 1943, with W.S.A.

---

I. John Milbury is not a party to this action, because he could not be served in this district.

5. The contracts identified in paragraphs 2 and 4, supra, were for the purpose of having the prime contractors furnish supplies, materials, equipment and services to the W.S.A. and were on a cost-plus-a-fixed-fee or other cost reimbursable basis.

6. Henry J. Kunzig Company, 108 Walnut Street, Philadelphia, Pa. ("Kunzig Company"), was a subcontractor of both General Engineering and Pioneer Engineering within the meaning of §§ 1 and 2 of the Anti-Kickback Act under their contracts with the W.S.A. Henry J. Kunzig was the owner and operator of the Kunzig Company during the period 1940 to 1945.

7. During the period September 1943 to February 1945, Henry J. Kunzig paid money or directed his agents or employees to pay money on his behalf to Gemmell, secretary-treasurer of General Engineering, and to Pioneer Engineering. These payments were ten per cent of the amounts received by the Kunzig Company from the prime contractors for materials and services furnished the prime contractors under the subcontracts. None of these payments was made to or on behalf of General Engineering. Payments to Gemmell totaled $25,871.90, while those to Pioneer Engineering amounted to $28,902.78.

8. At the outset of the trial of this action, the United States admitted that it had no claim against General Engineering, and requested an order of dismissal of the action as to General Engineering.

9. The payments mentioned in paragraph No. 7, supra, were either inducements for the award of the subcontracts from General Engineering and Pioneer Engineering or as an acknowledgment of subcontracts previously awarded to the Kunzig Company, and were "kickbacks" within the prohibition of the Anti-Kickback Act.

10. During the period January 1944 to August 1944, Peacock Welding Company, 404–06 N. Sixth Street, Philadelphia, Pa. ("Peacock Welding"), was a subcontractor of General Engineering within the meaning of §§ 1 and 2 of the Anti-Kickback Act under its contracts with the W.S.A. Earnest J. Peacock was the owner and operator of Peacock Welding.

11. Peacock made payments of money in the amount of $2,111 to Milbury, an employee of General Engineering. The payments were computed on the basis of $4 per machine a day used by Peacock Welding on materials and services furnished General Engineering under the subcontracts. Milbury divided the payments received from Peacock with Gemmell.

12. Out of the payments of $2,111 made to Milbury, $1,461 represents payments made by Peacock in cooperation with and at the request of agents of the Federal Bureau of Investigation without the knowledge of Milbury and Gemmell. The total payments were either inducements for the award of a subcontract from General Engineering or as an acknowledgment of a subcontract previously awarded to Peacock Welding by General Engineering.

### Conclusions of Law

1. This court has jurisdiction of the parties and the subject matter of this action.

2. The dismissal of the action against General Engineering does not defeat the claims of the United States against the remaining defendants to this action.

3. The defense of laches is not available against the United States.

4. Kunzig and Gemmell are jointly and severally liable to the United States in the amount of $25,871.90 for the "kickbacks" made by Kunzig to Gemmell.

5. Kunzig is liable to the United States in the amount of $28,902.78 for the "kickbacks" made by him to Pioneer Engineering.

6. Gemmell is liable to the United States in the amount of $730.50 for half of the $1,461 "kickbacks" paid by Peacock to Milbury.

7. Gemmell and Peacock are jointly and severally liable in the amount of $325 to the United States for half of $650 "kickback" paid by Peacock to Milbury.

8. Peacock is liable to the United States in the amount of $325 for the other half of the $650 "kickback" paid by him to Milbury.

9. Peacock is entitled to set off the total amount of his liability to the United States with a portion of the fund of the $1,460 paid by him to Milbury in cooperation with and at the request of agents of the Federal Bureau of Investigation.

Accordingly, the motions to dismiss the complaint will be denied, and the United States may present an order for judgment.